UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HARTFORD FIRE
INSURANCE COMPANY

CIVIL ACTION

VERSUS

NO.  11-590-BAJ-SCR

NOTTINGHAM CONSTRUCTION
COMPANY, LLC, C&T EQUIPMENT, LLC,
TED CHRISTOPHER HICKS, CASEY
RAYBORN HICKS, TED HICKS, AND
CONSTANCE F. HICKS

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court pursuant to a Motion for Summary
Judgment filed by Plaintiff, Hartford Fire Insurance Company ("Hartford," or
"Plaintiff") (doc. 18-1). Defendants Nottingham Construction Company, LLC,
C&T Equipment, LLC, Ted Christopher Hicks, Casey Rayborn Hicks, Ted
Hicks, and Constance Hicks ("Nottingham" or "Defendants," collectively) filed
an opposition (doc. 25), and Hartford filed a reply (doc. 29). Jurisdiction is
based on 28 U.S.C. § 1332.

## I.    FACTUAL BACKGROUND

Plaintiff has submitted a statement of undisputed material facts
pursuant to Local rule 56.1 (doc. 18-2). Defendants contest some of those
facts, as set forth herein (doc. 26).

1

Hartford issues surety bonds and stands as surety for select companies involved in litigation (doc. 18-1, p. 2). Nottingham sought out Hartford to execute certain surety bonds with Nottingham as principal (doc. 18-1, p. 2). In August 2006, Defendants executed a General Indemnity Agreement with Plaintiff, containing the following relevant obligations, in pertinent part:[1]

> 5. **Indemnity and Exoneration.** The Indemnitors are jointly and severally liable to Hartford, and will indemnify, exonerate and hold Hartford harmless from all loss, liability, damages and expenses including, but not limited to, court costs, attorney's fees, professional fees and consulting fees, which Hartford incurs or sustains (1) because of having furnished any Bond, (2) because of the failure of an Indemnitor to discharge its obligations under this Agreement, (3) in enforcing any of the provisions of the Agreement, (4) in pursuing the collection of any loss incurred hereunder, or (5) in the investigation of any claim submitted under any Bond. Hartford may bring separate suits on this Agreement as causes of action accrue, and the bringing of such suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action.
>
> 7. **Claim Settlement.** Hartford has the right to adjust, settle or compromise any claim, demand, suit or judgment upon any Bonds without affecting the Indemnitors' liability under this Agreement. The Indemnitors shall immediately be liable to Hartford for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by Hartford in the belief that either (1) Hartford was or might be liable therefore, or (2) they were necessary or advisable to protect Hartford's rights or to avoid or lessen Hartford's liability. . . .

---

[1] Defendants are Indemnitors pursuant to the Agreement, and are referred to likewise in the Agreement.

(doc. 18-2, p. 2–3). The Agreement further defines "Bonds" as "any and all contracts of suretyship, guarantees, obligations and undertakings issued in accordance with this Agreement" (doc. 18-1, p. 4).

In 2003, Nottingham was a party to litigation with Amitech, U.S.A., Ltd. ("Amitech").[2] Before trial commenced in that case, the court granted a Motion for Summary Judgment filed on behalf of Amitech and ordered Nottingham to pay a total of $579,802.32, to Amitech (doc. 18-1, p. 4). After trial, the court then rendered a judgment awarding to Nottingham the sum of $893,520, plus judicial interest (doc. 18-1, p. 5). A dispute then arose between the parties to that trial as to whether the amount of the judgment awarded to Nottingham included the amount awarded to Amitech in Summary Judgment (doc. 18-1, p. 5). As a result, Nottingham sought a suspensive appeal "insofar as the Judgment may be interpreted to be subject to an offset of $409,000.00 in favor of Amitech based on the Summary Judgment Order" (doc. 18-1, p. 5).

On May 28, 2009, at the request of Nottingham and pursuant to the Agreement, Hartford, as surety, executed a Suspensive Appeal Bond pursuant to the Louisiana Code of Civil Procedure for the sum of

---

[2] The matter was entitled *Amitech, U.S.A., Ltd. V. Nottingham Construction Company, L.L.C.*, and was litigated in the Ninteenth Judicial District Court for the Parish of East Baton Rouge in Baton Rouge, La.

$579,802.32[3] (doc. 18-2, p.3). In October 2010, the appellate court concluded, in relevant part, that the sum awarded to Amitech in Summary Judgment was separate from the amount awarded to Nottingham by the Final Judgment. *See Amitech, U.S.A., Ltd. V. Nottingham Construction Co.*, No. 2009-2048, p. 31 (La. App. 1 Cir. 10/29/10); 57 So.3d 1043, 1066. Nottingham was the principal to the Bond (doc. 18-2, p. 3). On July 21, 2011, an attorney for Amitech forwarded a letter to Hartford, making a claim upon the Suspensive Appeal Bond (doc. 18-2, p. 3). Hartford alleges it "notified Indemnitors of Amitech's claim against the Suspensive Appeal Bond" and demanded indemnification (doc. 18-2, p. 3), but Defendants admit only that Nottingham received a copy of the letter, arguing there is no evidence that the letter was forwarded to all indemnitors (doc. 26, p. 2). Hartford then retained the services of a law firm to investigate its liability under the Bond and, on August 18, 2011, issued a check to Amitech in the amount of the Bond, $579,802.32 (doc. 18-2, p. 4). Hartford argues this payment was made to discharge its obligations under the Suspensive Appeal Bond (doc. 18-2, p. 4), but Defendants assert that Hartford paid in error for several reasons, discussed in further detail below (doc. 26, p. 2). Defendants have not made any payments to Hartford or held them harmless pursuant to the Indemnity Agreement. (doc. 18-2, p. 4) Hartford has also incurred attorney's fees in the

---

[3] The amount awarded to Amitech on summary judgment.

amount of $20,663 as a result of the investigation into its liability and obligations under the Suspensive Appeal Bond. (doc. 18-2, p. 4)

Hartford then filed a Complaint in this Court (doc. 1), which it later amended (doc. 4), seeking Indemnification plus costs and attorney's fees from Defendants. Hartford has also filed for summary judgment (doc. 18-1). Defendants oppose the motion (doc. 25), and Hartford has replied (doc. 29).

## II. LAW AND DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air*

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Celotex Corp. V. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Hartford argues it is entitled to Summary Judgment because the terms of the agreement govern the obligations of the defendant, and, pursuant to those terms, Hartford is entitled to indemnity for all losses incurred as a result of executing the Suspensive Appeal Bond, "including expenses, costs, attorneys fees incurred in enforcing the indemnity obligations of the Defendants" (doc. 18-2, p. 9–10). Defendants argue summary judgment is improper because their indemnity obligations were never triggered for five reasons: 1) the Suspensive Appeal Bond at issue was cancelled and never reinstated; 2) the obligations set forth in the appeal bond were never triggered; 3) Hartford tendered payment to Amitech prematurely; 4) the Suspensive Appeal Bond did not secure the specific judgment appealed from; and 5) Hartford cannot claim that it was in good faith when it tendered payment to Amitech (doc. 25).

### a. Cancellation of the Suspensive Appeal Bond

Nottingham alleges the evidence in this case "establishes conclusively that the appeal bond was cancelled and the premium was returned to

6

Nottingham on March 17, 2010" (doc. 25, p. 9). In support of this assertion, Nottingham offers an affidavit of defendant Ted Hicks as well as documentary evidence that shows two payments from Hartford to Nottingham that purport to show the bond in question was closed as of March 17, 2010, thereby extinguishing the suretyship contract between the parties insofar as the appeal bond is concerned. The obligations of a surety may be extinguished in the same manner in which obligations in general are extinguished. La. Civ. Code art. 3058. Under the Louisiana Civil Code, obligations are extinguished in six ways: 1) performance, 2) impossibility, 3) novation, 4) remission, 5) compensation, and 6) confusion. La. Civ Code. arts. 1854–1905. Hartford argues, and the Court agrees, the only available avenue to extinction in the instant case is remission. Remission of a debt by an obligee extinguishes an obligation, and such remission may be express or tacit. La. Civ. Code art. 1888. In the instant case, Amitech is the obligee as creditor of the appeal bond, while Defendants are the principal obligor or debtor, and Hartford is the surety. Defendants have not alleged, nor do they provide any evidence of, any communication whatsoever on the part of Amitech, the obligee, let alone any communication giving rise to a remission of the debt in favor of Defendants or Hartford.

Having established that the Suretyship obligations of Hartford were not extinguished, the Court must now consider whether the Suretyship was terminated. A surety may terminate the Suretyship by notice to the creditor. La. Civ. Code. art. 3061. There are no allegations nor evidence of any such notice in the instant case. Therefore the Suretyship contract entered into between Nottingham and Hartford (in the form of an appeal bond) was not terminated, either.

Furthermore, it is difficult to determine how the parties would have been able to prosecute an appeal in the Louisiana First Circuit Court of Appeals without security for the $409,000 summary judgment rendered by the trial court in favor of Amitech. The Louisiana Code of Civil Procedure requires parties to furnish security for suspensive appeals of final judgments. La. Code. Civ. Pro. art. 2123–2124. Although Defendants argue there was no appeal bond for the final judgment appealed from, the appellate court did indeed address the sum awarded to Amitech in summary judgment. *See Amitech, U.S.A., Ltd. V. Nottingham Construction Co.*, No. 2009-2048, (La. App. 1 Cir. 10/29/10); 57 So.3d 1043. If the Court were to side with Nottingham and find that no appeal bond was issued in connection with the summary judgment, then the parties would have performed a successful "end run" around the Louisiana Code of Civil Procedure, as there is no evidence

8

showing another source of security for that judgment. Therefore, the Court finds the appeal bond was not effectively cancelled.

### b. Whether Hartford's Obligations Under the Suspensive Appeal Bond were Triggered

Defendants next argue there is a genuine issue of material fact as to whether the obligations of the appeal bond were ever triggered. Specifically, they assert the appeal bond "only secured the offset position [of the $409,000 summary judgment award] as it existed at the time it left the trial court" (doc. 25, p. 9). The appellate court made multiple changes to the trial court judgment, some which could result in confusion as to whether the summary judgment award was included or not. As such, Defendants state "a plausible argument exists that the $409,000 was satisfied as an offset to amounts awarded to Nottingham and did not trigger the appeal" (doc. 25, p. 9–10). However, the appellate court's opinion shows it considered the trial court's final judgment wholly separate from its summary judgment, clearly delineating each party's amount of liability. After it considered the final judgment of the trial court, the appellate court stated, "Additionally, we note that the trial court, in its September 25, 2008, judgment,[4] ordered Nottingham to return the $409,000.00 it had received pursuant to the purported settlement." *Amitech,* No. 2009-2048, p. 31; 57 So.3d at 1066. It

---

[4] The date of the trial court's ruling on summary judgment.

then affirmed the award and required Nottingham to pay both judgments.[5] *Id.* Nottingham sought rehearing with the appellate court, was denied, and then applied for writs to the Louisiana Supreme Court, and was denied again. *Amitech, U.S.A. Ltd. v. Nottingham Const. Co.*, 63 So.3d 1043 (La. 2011). Thus, Nottingham was left with no options to seek to overturn the holding of the appellate court. Therefore, because the appellate court specifically affirmed the trial court's summary judgment (secured by the appeal bond) and Nottingham had no further options, the Court finds there is no genuine issue of material fact as to whether the obligations of the appeal bond were triggered.

### c. Whether Hartford Tendered Payment to Amitech Prematurely

Defendants allege Hartford paid the sum of the appeal bond prematurely because it failed to follow the procedure required by the Louisiana Revised Statutes section 13:4451,[6] thereby relieving Defendants of

---

[5] The appellate court modified several of the trial court's findings upon final judgment, but affirmed its partial final judgment which gave rise to the $409,000 award to Amitech. *Amitech*, 2009-2048, p. 31; 57 So.3d at 1066.

[6] That section provides:

> In all cases of appeal to any of the appellate courts, if the judgment appealed from be affirmed, the party in whose favor it is rendered on return of execution in the lower court that no property has been found, or not enough to satisfy the judgment and execution, after due demand on both parties, or their attorneys or legal representatives, may obtain a decree against the surety on the appeal bond, or his legal representative, for the amount of the judgment or any unsatisfied balance thereof, on motion, after ten days' notice. This motion shall be tried summarily and without the intervention of a jury, unless the surety or his legal representative shall allege, under oath, that the signature to the bond, purporting to be that of the surety, is not genuine, or that judgment has been satisfied.

their obligation to reimburse Hartford. Hartford argues this bears no relationship to Nottingham's liability under the Indemnity Agreement, which provides:

> Hartford has the right to adjust, settle or compromise any claim, demand, suit or judgment upon any Bonds without affecting the Indemnitors' liability under this Agreement. The Indemnitors shall immediately be liable to Hartford for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by Hartford in the belief that either (1) Hartford was or might be liable therefore, or (2) they were necessary or advisable to protect Hartford's rights or to avoid or lessen Hartford's liability.

(doc. 18-2, p. 3) The judgment of the appellate court and subsequent denials of a rehearing and writ application create liability, or at least the potential therefor, on the part of Hartford, affording it the right to pay Amitech pursuant to the agreement. Therefore, Hartford had the right under the terms Indemnity Agreement to tender payment to Amitech for the full amount of the appeal bond.    Furthermore, any procedural misstep by Hartford does not affect Defendant's liability in this case. Section 13:4451 is intended for the benefit of the surety, not the principal obligor. One of those steps is the determination that the principal obligor is unable to satisfy the amount of the judgment. In the instant case, Hartford was satisfied on its own, after its own correspondence with Amitech,[7] that Nottingham was

---

La. R.S. § 13:4451.
[7] Hartford specifically states it learned that Nottingham had no assets and was defunct at the time the Demand Letter from Amitech was received. (doc. 18-3) Nottingham does not dispute this fact.

unable to pay the judgment and that it was liable for the amount of the bond. In other words, Hartford was satisfied it already had the information it needed to determine whether or not payment to Amitech was due, and further litigation was unnecessary. If the Court were to find that an alleged "premature payment" created a genuine issue in this case, it would effectively encourage sureties to enter into litigation that is both costly and unnecessary. Therefore the Court finds there is no genuine issue of material fact as to whether Hartford's payment to Amitech was "premature."

### d. Whether the Appeal Bond Secured the Judgment Appealed From

Defendants argue the obligations of Nottingham under the Indemnity Agreement were not triggered because the Suspensive Appeal Bond secured a different judgment than the one appealed from. In the original case, the trial court rendered summary judgment on September 25, 2008, and then judgment after the trial on the merits on January 8, 2009. Neither of these judgments was a final, appealable judgment. The trial court then rendered a final judgment on April 15, 2009, which was appealed. Defendants assert the Suspensive Appeal Bond at issue secured only the judgments rendered on September 25, 2008, and January 8, 2009, not the final judgment appealed from, which was rendered April 15, 2009. However, as discussed earlier, *infra*, the appellate court considered and affirmed the September 2008

awarding of summary judgment by the trial court, and also amended the judgment rendered in January 2009. Thus, the two earlier judgments were *made appealable* by the later judgment. Furthermore, the Suspensive Appeal Bond in this case was filed May 28, 2009, more than a month after the April 15, 2009, final judgment.

Defendants are effectively asserting one of two scenarios: a) Nottingham was able to appeal the trial court's summary judgment ruling without an appeal bond to secure it; or b) Nottingham was appealing a different judgment altogether. The record shows that, in fact, neither of the two occurred. In its holding, the appellate court specifically addressed the trial court's summary judgment, and the Suspensive Appeal Bond secured part of that very same judgment. Therefore, the Court finds there is no genuine issue of material fact as to whether the Suspensive Appeal Bond secured the judgment appealed from.

### e. Whether Hartford was in Good Faith when it Submitted Payment to Amitech Pursuant to the Suspensive Appeal Bond

Finally, Defendants argue that Hartford did not act as a surety in good faith when it made payment to Amitech. Therefore, Defendants claim Hartford paid at its "own risk" under article 3050 of the Louisiana Civil Code. Article 3050 applies when "[a] surety in good faith pays the creditor when the principal obligation is extinguished, or when the principal obligor had the

13

means of defeating it . . ." La. Civ. Code. art. 3050.  The Court has already established that the principal obligation in this case was not extinguished, and there is nothing in the record that shows Nottingham, the principal obligor, had any means of defeating the principal obligation. Therefore, the Court finds that Hartford paid Amitech the amount due on the Suspensive Appeal Bond in good faith and pursuant to the terms of the Indemnity Agreement it executed with Nottingham.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is hereby GRANTED.

Baton Rouge, Louisiana, November 21, 2012.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA